UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO: 2:16-cr-136-FtM-UACM

GEORGE VANCE THOMPSON, III
_____

**OPINION AND ORDER**[1]

This matter comes before the Court on Defendant George Vance Thompson III's ("Thompson") Motion to Suppress (Doc. 19) filed on February 28, 2017. The Government filed a Response in Opposition (Doc. 22) on March 14, 2017. The Court held an evidentiary hearing on Thompson's Motion on April 4, 2017. Thompson was present and represented by Robert P. Harris, Esq. The Government was represented by Jeffrey F. Michelland, Assistant United States Attorney. Thompson's Motion is ripe for review.

**BACKGROUND**

At the hearing, the Government called three witnesses: (1) Sergeant Bryan Perera ("Sergeant Perera"); (2) Officer Scott Newbury ("Officer Newbury"); and (3) Deputy Sheriff Guillermo Monmany ("Deputy Sheriff Monmay"). The Government introduced fourteen exhibits. Thompson testified and introduced no exhibits. Based on the evidence, the Court makes these material findings of fact.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

As a preliminary matter, because standing was at issue, Thompson testified, in a limited capacity, regarding his relationship to 200 East Jersey Road, Lehigh Acres, Florida ("residence"). Thompson had a key to the residence and could come and go as he pleased. He stayed overnight from September 14, 2016, to September 15, 2016.

On September 15, 2016, Special Agent Williams ("Agent Williams") conducted surveillance of the residence at Officer Newbury's request. Officer Newbury testified that Thompson was connected to the residence. During the surveillance, Agent Williams observed Thompson coming and going from the residence. Agent Williams informed Officer Newbury that Thompson was at the residence.

That same day, a USMS Florida Regional Fugitive Task Force ("Task Force"), including Sergeant Perera and Officer Newbury, arrived at the residence to execute an arrest warrant concerning a state violation of probation. Sergeant Perera was acting in his role as "breacher" and Officer Newbury secured the exterior northeast corner of the residence. The Task Force approached the residence and announced their presence. Through a window in the front door of the residence, Sergeant Perera observed Thompson stand up from a couch and move quickly toward a hallway. Thompson entered the hallway directly behind the couch later identified as leading to a bedroom. Sergeant Perera lost sight of Thompson for a few seconds. He believed that Thompson was warning someone that law enforcement was present or was arming himself.[2] Sergeant Perera testified that he was "100 percent" concerned someone else was in the back area. In his opinion, ignoring the back area could have been a "fatal mistake."

---

[2] Sergeant Perera also testified that he was aware of the suspected association between Thompson and the Club Blu shooting.

When Thompson was out of sight, the Task Force broke a window. But before the breaching process was completed, Thompson returned to the living room, opened the door, and complied with orders. Sergeant Perera estimated the time from the initial knock until Thompson opened the door to be ten seconds. Thompson was cuffed and arrested inside the home between the front door and a couch.[3]

During the breaching process, Officer Newbury was outside the residence. He could not see into the home, but heard through the radio that Thompson had fled into the residence. After the arrest, Officer Newbury entered the residence and cleared the house with five or six other Task Force members. Officer Newbury cleared the kitchen including a slight recess area next to the refrigerator which was obstructing his view. While clearing the kitchen area, he saw what he suspected to be cocaine and a scale with cocaine residue on the kitchen counter.

Next, Officer Newbury moved to check the hallway where Thompson retreated. The hallway led to a dark bedroom. After entering the bedroom, Officer Newbury cleared the closet area. As he was doing so, Officer Newbury saw a glass jar with suspect cocaine on a nightstand behind a television. Officer Newbury testified that he cleared the bedroom and hallway areas because of his concern there could be another individual in the back bedroom. Thompson fled in that direction after initial contact with the Task Force. He testified that other agents were clearing the other side of the residence. No other individuals were found during the sweep. Later, Deputy Sheriff Monmay obtained

---

[3] Sergeant Perera testified that there was approximately six to eight feet between the front door and the couch.

a search warrant based on the contraband found in plain view. A subsequent search of the residence found drugs, ammunition, and various weapons.

On December 7, 2016, a grand jury indicted Thompson for (1) possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (2) possession with intent to sell a controlled substance under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; and (3) possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. Now, Thompson moves to suppress all evidence obtained as a result of the sweep and subsequent search.

## DISCUSSION

In his Motion to Suppress, Thompson argues that the search extended to rooms not adjoining the place of arrest and law enforcement officers did not have the requisite reasonable belief to conduct a protective sweep. Thompson contends there are no articulable facts that an individual was hiding somewhere in the residence that posed a danger to the officers. Further, Thompson avers surveillance precluded the need to sweep the home because no other individuals were observed entering or exiting the home during the surveillance period. At the suppression hearing, Thompson argued that the officers lacked the necessary reasonable belief that Thompson was residing at the residence before they acted on the arrest warrant.

The Government argues that officers may conduct a limited sweep of spaces immediately adjoining the place of arrest and the kitchen was immediately adjacent. Further, the Government contends that because Thompson fled to the hallway and bedroom areas the officers had a reasonable belief that another individual was present at the residence who could have launched an attack. The Government also maintains

that the surveillance did not preclude another individual from being in the home. The Court will address each argument in turn.

1.  Standing

The Fourth Amendment grants people the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. To contest the validity of a search, a party must have standing, "an objectively reasonable expectation of privacy in the invaded area." *United States v. Jackson*, 618 F. App'x 472, 474 (11th Cir. 2015), *cert. denied,* 136 S. Ct. 376 (2015) (citation omitted). The party who advances a motion to suppress "has the burden to allege, and if the allegations are disputed, to prove, that his own Fourth Amendment rights were violated by the challenged search or seizure." *Id.* (citation omitted). A defendant's standing is a threshold issue that must be addressed when ruling on a motion to suppress. *See United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984). A court can determine standing by looking at a defendant's relationship to the place searched. *See e.g. Minnesota v. Olson*, 495 U.S. 91, 96 (1990) (holding that an overnight guest had a reasonable expectation of privacy in his host's home); *United States v. Chaves*, 169 F.3d 687, 690 (11th Cir. 1999) (finding that a defendant had a reasonable expectation of privacy in a warehouse where he kept personal and business papers and had a key).

Here, the Government initially challenged Thompson's standing to contest the validity of the search. Thompson testified, in a limited capacity, to establish standing. He testified that he had a key to the residence, could come and go, and stayed overnight. After Thompson's testimony, the Government withdrew its objection to the standing issue. Therefore, the Court finds that Thompson has standing to contest the search.

2. Execution of Arrest Warrant

"[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives where there is reason to believe the suspect is within." *Payton v. N.Y.*, 445 U.S. 573, 603 (1980). The Eleventh Circuit determined that *Payton* required a two-part inquiry: (1) "there must be a reasonable belief that the location to be searched is the suspect's dwelling;" and (2) "the police must have reason to believe that the suspect is within the dwelling." *United States v. Magluta*, 44 F.3d 1530, 1533 (11th Cir. 1995) (internal quotations omitted). The *Magluta* court held that the "reason to believe" standard means

> in order for law enforcement officials to enter a residence to execute an arrest warrant for a resident of the premises, the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry.

*Id.* at 1535. Officer Newbury testified that the 200 East Jersey Road residence was associated with Thompson. He requested Agent Williams surveil the home. Thompson was seen entering and exiting the residence prior to the execution of the arrest warrant. Based on the facts before the Court, the requirements to enter the residence and execute the search warrant were met.

3. Validity of the Protective Sweep

A "protective sweep" is a "quick and limited search of premises" and is "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). In *Buie*, the Supreme Court held that "incident to the arrest the officers could, as a precautionary matter and without probable

cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334. Outside that, a searching officer must possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 337.

Here, the Task Force conducted a valid sweep of the residence. First, the arrest warrant granted a limited ability to enter a home. *See Payton,* 445 U.S. at 603. Before the Task Force gained access to the residence, but after they had announced, Sergeant Perara observed Thompson quickly move out of sight down a hallway. Thompson was out of view for several seconds before returning to open the door. He was arrested inside the home between the front door and a couch. The kitchen, where the cocaine and scale were found, was immediately adjoining the place of arrest. The officers merely stepped into a position to see the entire kitchen area with nothing obstructing their view to makes sure no one was hiding. Further, the officers were justified in their protective sweep of the bedroom and hallway areas because Thompson disappeared in that direction after the Task Force announced their presence. Further, both Officer Newbury and Sergeant Perara testified that they were concerned that another individual was in the back bedroom after Thompson fled in that direction. Because the protective sweep was justified, there is no reason to suppress evidence found in plain view. *See United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006) ("The plain view doctrine allows police officers to seize any contraband in plain view if the officers have a right of access to the place where the contraband is located.").

The Court is not persuaded by Thompson's argument that the surveillance obviated the need for a protective sweep because no other individuals were observed entering or exiting the residence. Thompson relies on *United States v. Scott*, where the defendant was arrested outside the home, pre-arrest surveillance identified no other individuals in the home, an anonymous tip did not afford the officers any reason to believe other individuals were in the home, and no other articulable facts surfaced establishing the requisite reasonable belief. 517 F. App'x 647, 649 (11th Cir. 2013). While surveillance of the residence may factor into a court's evaluation of law enforcement's reasonable belief, it is one part to a whole. Here, other articulable facts were presented. Moreover, other courts recognize the dangers associated with in-home arrests "are often greater than those conducted on the street due to the 'home turf' advantage the suspect has over the police." *United States v. Hromada,* 49 F.3d 685, 690 n.9 (11th Cir. 1995) (citation omitted). In short, Thompson's hasty move toward the bedroom coupled with Sergeant Perara's testimony about losing sight of Thompson warranted the protective sweep. The Court finds that the protective sweep was justified and Thompson's Fourth Amendment rights were not violated. Thus, Thompson's Motion to Suppress is denied.

Accordingly, it is now **ORDERED:**

Defendant George Vance Thompson III's Motion to Suppress (Doc. 19) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida this 12th day of April, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record